# BORRELLI & ASSOCIATES
## P.L.L.C.
www.employmentlawyernewyork.com

| | |
|---|---|
| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

December 3, 2019

<u>Via ECF</u>
The Honorable Stuart D. Aaron
United States Magistrate Judge for the
Southern District of New York
500 Pearl Street
New York, New York 10007

  Re: *Cuevas v. Our Children First, Inc.*
    <u>Docket No: 19-cv-7322 (SDA)</u>

Dear Judge Aaron:

  This firm represents Plaintiff Judith Cuevas in the above-referenced wage-and-hour action brought under, *inter alia*, the Fair Labor Standards Act ("FLSA"), against Our Children First, Inc., ("Defendant," and together with Plaintiff, as "the Parties"). We submit this letter, on behalf of the Parties, to respectfully request that the Court review and approve the Parties' settlement of Plaintiff's claims brought pursuant to the FLSA as fair and reasonable in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). A copy of the Parties' fully-executed settlement agreement is attached hereto as **Exhibit A.**[1]

**I. PRELIMINARY STATEMENT**

  On August 6, 2019, Plaintiff filed a Complaint in this Court against Defendant - - a Bronx-located community-based clinic that provides clinical services to children - - asserting claims that Defendant, *inter alia*, failed to pay her overtime pursuant to the FLSA. *See* Dkt. No. 1. Specifically, Plaintiff alleged that she worked for Defendant as a misclassified service coordinator supervisor from September 16, 2016 until July 16, 2018, and that during that time, she routinely

---

[1] Plaintiff also brings claims for Defendant's alleged violations of the New York Labor Law, which although resolved in the Parties' settlement agreement, do not require court approval for dismissal. *E.g. Simono v. Gemco Realty II, LLC*, No. 16-cv-5385-AJN, Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)).

worked in excess of forty hours per week, but Defendant failed to pay her at the statutorily-applicable overtime rate of pay for all hours that she worked each week in excess of forty, and instead paid her a flat weekly salary that did not include overtime compensation.

On August 8, 2019, the District Court entered an order referring this action for settlement before this Court. *See* Dkt. Nos. 7-8. On November 8, 2019, the Parties participated in a settlement conference with Your Honor, attended by Plaintiff and Armando Tellez, Defendant's Chief Executive Office. Prior to doing so, the Parties submitted *ex parte* statements describing their respective views on liability and damages, as well as Plaintiff's damage calculations. With the Court's assistance, the Parties agreed to settle the matter at the conference for the amount of $12,500.00, inclusive of attorneys' fees and costs. As part of the settlement, Defendant admits no wrong-doing and maintains that its wage practices are in full compliance with the law. The Parties have since consented to this Court's jurisdiction for all purposes. *See* Dkt. No. 15. Through this motion, for the reasons discussed at the conference and described herein, the Parties request that this Court approve the settlement as fair and reasonable and close the case.

Additionally, Plaintiff's counsel respectfully submits an application attorneys' fees of one-third of the total net settlement amount after deduction of litigation expenses, which calculates to $4,033.33, plus $400.00 as reimbursement for their out-of-pocket litigation expenses, which are limited to the filing fee.

## II.     **THE AGREEMENT IS FAIR AND REASONABLE**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. When analyzing a Rule 41 FLSA settlement, courts approve them "when they are reached as a result of contested litigation to resolve bona fide disputes." *Flores v. Hill Country Chicken NY, LLC*, 2018 WL 2389076, at *2 (S.D.N.Y. May 25, 2018) (citing *Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Chowdhury v. Brioni Am., Inc.*, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013)). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. "Generally, there is a strong presumption in favor of finding a settlement fair, because the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Qi Jun Kang v. Jia Xing 39th Inc.*, 2018 WL 4538906, at *1 (S.D.N.Y. Sept. 21, 2018) (citing *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)). "The force of this presumption is increased when a settlement is reached with the assistance of an experienced mediator." *Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citing *Sukhnandan v. Royal Health Care of Long Island LLC*, 2013 WL 4734818, at *2 (S.D.N.Y. Sept. 3, 2012)); *accord In re Penthouse Executive Club Comp. Litig.*, 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013)

("A settlement . . . reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process."); *Toure v. Amerigroup Corp.*, 2012 WL 1432302, at *1 (E.D.N.Y. Apr. 20, 2012) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive.").

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (1) the plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Id*.

### A. Range of Possible Recovery

As detailed in Plaintiff's *ex parte* settlement conference statement submitted to the Court on October 31, 2019, and as discussed at the settlement conference, Plaintiff alleges that Defendant misclassified her as exempt, despite never providing her with the requisite executive authority to hire, fire, or give any suggestions or recommendations as to the hiring, firing, advancement, promotion, or any other change of status with respect to the service coordinators that she undisputedly supervised. Plaintiff further alleges that she worked five days per week, Mondays through Fridays, from 7:30 a.m. until 5:00 p.m., without a scheduled or uninterrupted break during the day, totaling forty-seven and one-half scheduled hours per week. For her work, Plaintiff asserts that Defendant paid her a flat annual salary of $55,000.00, which yields a weekly salary of $1,057.69, which did not include overtime for the hours that she worked over forty each week.

For its part, Defendant contends that Plaintiff not only supervised all service coordinators, but that she also possessed the authority to hire and fire the service coordinators that she supervised. Defendant further contends that Plaintiff routinely conducted interviews of the service coordinators and provided direct input from those interviews to her supervisors, who placed significant weight upon Plaintiff's input as to whether to hire the applicant for the position. Based on these duties, Defendant contends that it properly classified Plaintiff under the FLSA's executive exemption from overtime, in conjunction with the undisputed fact that it paid her more than $455.00 per week. *See* 29 C.F.R. Part 541.100(a)(1).

Based on the hours and wages explained above, the settlement provides Plaintiff with a reasonable recovery under the FLSA considering the misclassification dispute between the Parties. Indeed, Plaintiff's range of recovery is presented as follows:

| Weeks Worked | Hours Alleged | Maximum Actual Plus | Settlement Amount | Recovery Percentage |
|---|---|---|---|---|

3

| Within FLSA Statute of Limitations | Per Week | Liquidated Recovery | Received After Fees/Costs | Compared to Best Day |
|---|---|---|---|---|
| 95 | 47.5 | $56,775.29 | $8,066.67 | 14.2% |

Although a fairly low percentage of recovery when compared to Plaintiff's best day, based on the nature of this case, there is a realistic possibility that Plaintiff would actually receive less if this case had not settled for the amount that it did and proceeded to trial. Indeed, if a jury determined that Plaintiff was properly classified as exempt from overtime as her title suggests, she would be entitled to nothing. Additionally, "if the employer shows to the satisfaction of the Court that the act or omission giving rise to such action was in good faith and that [it] had reasonable grounds for believing that [its] act or omission was not a violation of the FLSA, the court may, in its sound discretion, award no liquidated damages." *See id*. at *3-4 (finding that plaintiff failed to demonstrate that defendant willfully violated the FLSA, but defendant failed to produce any evidence that it took steps to learn the requirements of the FLSA and comply with them). Thus, if Defendant produced evidence of good faith, Plaintiff's maximum recovery would be halved.

Accordingly, the result achieved for Plaintiff represents a fair and reasonable recovery in light of her best possible result, and therefore this factor favors approval. *See Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

    B. *Avoidance of Burdens and Expenses*

Second, settling at this stage obviously allows the Parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the Parties would have then been obligated to complete formal written and document discovery and depositions of all parties, which given the fact-intensive nature of the exemption question at issue, would have totaled at least ten individuals and one corporate witness, and then engage in subsequent motion practice. The Parties would then likely proceed to a trial in this matter, followed by post-trial motions and a potential appeal, resulting in a delayed resolution of Plaintiff's claims at potentially great expense. At this point in the action, there have been no out-of-pocket litigation expenses incurred save for the filing fee, but if the case had not settled, the costs would naturally balloon. This settlement eliminates all of those costs and delays and this clearly weighs in favor of approval.

*C. Litigation Risks*

Third, of course, all parties face the risk of losing at trial, either in whole or in part. Here, as discussed at the settlement conference, it is Plaintiff's position that although Defendant assigned Plaintiff the title of "supervisor," Plaintiff neither possessed the authority to hire or fire any of Defendant's employees, including the service coordinators that she supervised, nor did she provide any input or recommendation into the hiring or firing of any of Defendant's employees, thus removing her from the FLSA's executive exemption. *See* 29 C.F.R. 541.100(a)(4).

To the contrary, Defendant placed great weight on Plaintiff's title as supervisor and her undisputed managerial duties. Defendant stated that many witnesses would testify both as to her hiring and firing authority, as well as her power to provide input and recommendation into hiring and firing, as there was also no dispute that Plaintiff routinely engaged in interviews of service coordinators who ultimately worked under her. The Court stressed at the settlement conference that the optics of her being a "supervisor" provided a significant hurdle to Plaintiff's likelihood of success, and although summary judgment was likely not possible, a jury would very likely find her to be a manager based on its understanding of the term and accompanying duties. Additionally, even in the event that Plaintiff were to succeed on her claims, Defendant could foreseeably establish that it made a good faith effort to comply with the statute in classifying Plaintiff as exempt. In light of these attendant risks, the settlement amount weighs in favor of a fair and reasonable result that warrants this Court's approval.

*D. Arms-Length Bargaining, No Fraud or Collusion, No Cheeks Admonitions*

As detailed herein, this settlement was reached before expending otherwise-inevitable resources on formal discovery. Both sides realized that continued litigation would not be in the best interests of any party involved, and as a result of that recognition, the negotiations were pursued on both sides to come to a fair and reasonable compromise, with much-needed assistance from a Court-supervised settlement conference. Indeed, the fact that the Parties' settlement was reached as a result of a court-supervised settlement conference, based primarily upon the Court's guidance and assessment of the "risks of litigation and the benefits of the proposed settlement," bolsters the presumption of fairness. *Romero v. ABCZ Corp.*, 2017 WL 2560004, at *2 (S.D.N.Y. June 12, 2017).

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it, as it does not contain a confidentiality, non-disclosure, or non-disparagement clause that courts routinely find are "abusive or otherwise in strong tension with the remedial purposes of the FLSA." *See Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015). The settlement agreement does contain a mutual general release,

which is reasonable in the present case, as courts approve mutual general releases in FLSA cases "in order to bring closure to both sides" where the releases are "negotiated by competent counsel for both sides, releasing both plaintiff and defendants from liability for any such claims each might have against the other. . ." *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016). The fairness of such a release is reasonable where, as in the in the present case, it is brought as a single-plaintiff action. *See id*. Moreover, courts find that where a plaintiff is no longer an employee of the defendant, as is the case here, there is no "danger that the release was obtained through improper job-related pressure." *Id*. (citing *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-6 (S.D.N.Y. Nov. 6, 2015)).

Furthermore, the Parties' proposed order, submitted with the present motion as **Exhibit B**, requests that the Court retain jurisdiction over this matter for the sole purpose of enforcing the terms of the settlement agreement and entering judgment in accordance therewith should it become necessary. Should the Court decline to endorse that Order and issue its own from scratch, the Parties respectfully request that any such Order include that provision.

### III.  ATTORNEYS' FEES ARE ALSO REASONABLE

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Thallapaka v. Sheridan Hotel Assocs. LLC*, 2015 WL 5148867, at *2 (S.D.N.Y. Aug. 17, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). Attorneys' fees in FLSA settlements are examined, when examined, "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca*, 948 F. Supp. 2d at 366 (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $4,033.33, limited to one-third of the total settlement amount after deducting counsel's litigation expenses from the settlement sum. Courts in this Circuit routinely approve attorneys' fees awards at a rate of one-third of the total settlement. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) (stating that "we have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *Flores*, 104 F. Supp. 3d at 306 (noting that the percentage of recovery method is "the trend in this Circuit"); *see also McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 384 (S.D.N.Y. 2017); *Najera v. Royal Bedding Co., LLC*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (one-third contingency fees "are commonly accepted in the Second Circuit in FLSA cases") (collecting cases); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (same); *Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the

Second Circuit routinely approve of fees that amount to one-third of the total recovery). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. *See Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success"). Here, Plaintiff's counsel's requested fee of $4,033.33, which is one-third of the net settlement, is entirely reasonable and consistent with that law. At the Court's request, Plaintiff's counsel's retainer agreement with Plaintiff, with appropriate redactions, is annexed hereto as **Exhibit C**.

Moreover, the reasonableness of these fees is further solidified by applying the lodestar method as a cross check to ensure that counsel's fee award is not excessive in relation to the amount of work actually performed. *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72; *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 435 (S.D.N.Y. 2014) (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). Indeed, "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fee FLSA cases." *Sakiko Fujiwara*, 58 F. Supp. 3d at 439.

In order to conduct the lodestar crosscheck, Plaintiff's counsel multiplied the attorney and paralegal hours spent on the case by the individuals' reasonable hourly rates. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Michael J. Borrelli, the managing partner, would seek $400 per hour, Alexander T. Coleman, the Firm's litigating partner, would seek $350 per hour for his time, Jeffrey R. Maguire, the Firm's senior counsel on the matter would seek $295 per hour, and the Firm would seek $90.00 per hour on behalf of its paralegals/legal assistants. Courts within this Circuit regularly approve these rates in FLSA cases. *See Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that that "this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"); *Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (Feb. 9, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Davis et al. v. Uptown Communications & Electric, Inc. et al.*, 16-cv-3990-LB, Dkt. No. 105 (E.D.N.Y. Nov. 15, 2017) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for Jeffrey R. Maguire, and $90.00 per hour for the Firm's paralegals); *Simono v. Gemco Realty II, LLC*, Docket No.: 1:16-cv-05385 (AJN), Dkt. No. 32 (S.D.N.Y. Oct. 23, 2017) (approving as reasonable rates of $400.00 per hour for Mr. Borrelli, $350.00 per hour for Mr. Coleman, $200.00 for the firm's junior associates, and $100.00 per hour for the firm's paralegals).

The Firm calculated its lodestar to be $8,859.00. Thus, the Firm's requested fee of $4,033.33 is substantially less than that figure. Plaintiff's counsel's contemporaneous billing records are annexed hereto as **Exhibit D**.

Lastly, with respect to expenses, the Firm is seeking reimbursement for $400.00 in out-of-pocket expenses, comprised only of the filing fee.

**IV.     CONCLUSION**

In light of the foregoing, the Parties respectfully request that the Court approve their FLSA settlement and dismiss this matter with prejudice, while retaining jurisdiction for the sole purpose of enforcing the Parties' agreement and entering judgment in the event of a breach in accordance with the agreement's terms.

Respectfully submitted,

_____
Jeffrey R. Maguire, Esq.
*For the Firm*

C:  All Counsel of Record *via* ECF